902 So.2d 233 (2005)
SARASOTA COUNTY, a political subdivision of the State of Florida, Petitioner,
v.
NATIONAL CITY BANK OF CLEVELAND, OHIO, as Trustee of the Dorothy F. Hinchcliff Trust, Respondent.
No. 2D04-3297.
District Court of Appeal of Florida, Second District.
May 13, 2005.
Jorge L. Fernandez, County Attorney, and Elizabeth M. Woodford, Assistant County Attorney, Sarasota, for Petitioner.
Alan M. Oravec of Judd, Shea, Ulrich, Oravec, Wood & Dean, P.A., Sarasota, for Respondent.
ALTENBERND, Chief Judge.
Sarasota County ("the County") seeks certiorari review of an opinion issued by the circuit court sitting in its appellate capacity. The circuit court applied a statute of limitations to bar a code enforcement proceeding commenced pursuant to part I of chapter 162, Florida Statutes (2001), which is entitled the "Local Government Code Enforcement Boards Act." See § 162.01-.13, Fla. Stat. (2001). We grant relief, holding that section 95.11(3)(c), Florida Statutes (2001), has no application to such administrative enforcement proceedings. We are inclined to believe that all of chapter 95 has no application to such administrative proceedings. We decline to determine, at this time, whether such proceedings in specific cases could be barred by some legal theory based on unreasonable delay within the enforcement process.
National City is trustee of the Dorothy F. Hinchcliff Trust. The Trust owns property at 4510 Higel Avenue in Sarasota County, which is near the Gulf of Mexico. Ms. Hinchcliff purchased the property in 1996, placed the property in a trust, and died in 1998. The property includes a single-family residence that was constructed in 1980. Ms. Hinchcliff's grandson and his daughters have lived in this home since 1999.
*234 When the house was built in 1980, the Federal Emergency Management Act Flood Insurance Rate Map placed the house in zone A-12, requiring a base flood elevation of eleven feet. As a result, at the time of construction, the ground level of the house could not be used for human occupancy.
Sometime between 1980 and 1990, a prior owner of the property renovated the home, allegedly without obtaining a building permit, to add wallboard, electrical outlets, carpet, and air conditioning on the ground level. In 1990, the prior owner renovated the garage for use as an office and redesigned the stairs leading to the main floor of the house. A building permit was issued for the renovation of the stairs, and this construction was inspected by two County building inspectors. The County has taxed at least some of the unpermitted improvements to the ground level as habitable areas since 1991.
In 2001, the County commenced a code enforcement proceeding against National City pursuant to a local ordinance and part I of chapter 162, alleging that both the absence of a building permit for the construction between 1980 and 1990, and the construction of habitable space within the flood zone violated the Sarasota County Code. A special master conducted the administrative hearing pursuant to the Code.[1] The special master entered an order containing the preceding findings of fact. The special master concluded that the County had established the two violations and that the statute of limitations contained in section 95.11(3)(c) did not bar the County's enforcement action. Section 95.11(3)(c) provides that "[a]n action founded on the design, planning, or construction of an improvement to real property" must be commenced within four years, "with the time running from the date of actual possession by the owner." The special master based this conclusion on the fact that Ms. Hinchcliff's grandson and his daughters had resided in the house for less than four years at the time the County initiated its action, and thus, it had not been four years "from the date of actual possession by the owner."
The circuit court reviewed this final administrative order of a local government code enforcement board,[2] and reversed the special master. The circuit court agreed with the special master that the statute of limitations in section 95.11 applied to the case but concluded that the period of limitations began in the early 1990s when the County knew about the violations. The circuit court relied extensively upon another circuit court decision, Latorre v. Monroe County, No. 96-1109-CA-25, 2000 WL 34509018 (Fla. 16th Cir. Oct. 6, 2000).
The Latorre decision is admittedly very similar to this case. The circuit court judge who wrote that decision obviously spent considerable time and effort on the opinion. Nevertheless, we conclude that the Latorre decision erroneously equated an administrative proceeding with a civil action.
Chapter 95 applies to civil actions or proceedings. § 95.011, Fla. Stat. (2001). We have previously held that the statutes of limitation in chapter 95 do not apply to administrative license revocation proceedings. See Landes v. Dep't of Prof'l Reg., 441 So.2d 686 (Fla. 2d DCA 1983). Nothing in section 95.11(3)(c) suggests that the legislature intended it to apply to quasi-judicial proceedings initiated pursuant to any administrative law, and we are inclined to conclude the same as to all of chapter 95. Enforcement proceedings *235 brought under part I of chapter 162 are administrative actions that simply are not subject to the statute of limitations provided in section 95.11(3)(c). As a result, both the special master and the circuit court clearly applied the wrong law in deciding this case.
It is noteworthy that chapter 162 is divided into two parts, both of which authorize proceedings for code enforcement. Part I applies in this case and authorizes a county or municipality to adopt a code enforcement system that is administrative in nature, where administrative hearings are heard before special masters, and administrative penalties may be imposed. Part II provides for a supplemental method of enforcement which is clearly civil in nature and is enforced within the judicial system. There does not appear to be any provision that could serve as a statute of limitations for an enforcement proceeding initiated under part I of chapter 162. Presumably, a lawsuit filed under part II of chapter 162 is subject to statutes of limitation contained in chapter 95.
It is disconcerting to consider that the outcome of such an enforcement action could be determined merely by the choice of forum, administrative or judicial. As a result, we comment on two issues that have not yet been resolved in this case. First, we do not rule out the possibility that an administrative enforcement proceeding could be barred by some legal theory relating to delayed enforcement. The record in this proceeding does not allow us to determine whether some theory of laches, estoppel, or due process might bar an enforcement proceeding. We note that the relevant Sarasota Code provision was apparently enacted after these conditions were in existence, but no one suggests that the violations are "grandfathered" under any provision, or that retroactivity plays any part in these proceedings.
Likewise, we are not called upon to resolve any issue arising out of the continuing nature of these types of violations. Many building and safety code violations are continuing conditions. We would not expect a county to bring an enforcement proceeding against a property owner concerning a defective staircase that the owner had properly repaired years ago. Instead, the county might be expected to bring an enforcement action for a defective staircase that currently was defective and had been defective for many years. From a health and safety standpoint, local governments normally bring enforcement proceedings to cause landowners to correct existing conditions before they result in harm.
In this administrative proceeding, for example, Sarasota County maintains that the Trust's house has habitable areas that are only 5½ feet above sea level and that the house contains electrical outlets and air conditioning work that does not comply with code. It further maintains that the house is missing a load-bearing post in the old garage area. These violations are past actions undertaken by a prior owner that may have occurred even prior to the adoption of the relevant ordinance, yet the dangerous conditions still exist today and still pose a threat to human safety. Thus, the difficult legal issue that remains unresolved by this opinion is when, and under what circumstances, may a local government seek administrative enforcement for code violations of long-standing duration.
We grant the County's petition for writ of certiorari, quash the circuit court's order reversing the special master, and remand to the circuit court. We note that the decision in Latorre discusses concepts similar to laches and estoppel and that the special master rejected all of these arguments *236 based on the date that the Hinchcliff grandchildren occupied the house. Thus, it would not be improper for the circuit court to reverse and remand this case to the special master to further consider issues, other than the statute of limitations under chapter 95, that might bar enforcement proceedings in this case.
Petition for writ of certiorari granted.
FULMER, J., and THREADGILL, EDWARD F., Senior Judge, Concur.
NOTES
[1] See Sarasota County Code § 2-342, et seq.
[2] See § 26.012(1), Fla. Stat. (2004)